UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JUSTIN A. WADSWORTH,

    Petitioner,

    v.                                          Case No. 4:23-cv-4023-JPG

UNITED STATES OF AMERICA,                       Criminal No. 4:20-cr-40045-JPG

    Respondent.


## MEMORANDUM AND ORDER

This matter comes before the Court on a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. (Doc. 1). The Petitioner filed his motion on December 26, 2023. Finding that an evidentiary hearing is needed to resolve some of Wadsworth's claims, but not others, the Court **RESERVES ruling** on the Motion. The Court shall schedule an evidentiary hearing to determine whether Wadsworth directed his attorney to file a notice of appeal.

## I.    BACKGROUND

On June 30, 2022, the Petitioner, Justin A. Wadsworth, pled guilty to one count of attempted enticement of a minor and one count of attempted commercial sex trafficking of a child. (Case No. 4:20-cr-40045-JPG, Docs. 29, 62).[1] On January 10, 2023, Wadsworth was sentenced on those counts to the mandatory minimum of 180 months in prison. (Crim., Doc. 69).

On December 26, 2023, Wadsworth filed his motion under § 2255 alleging that he received ineffective assistance of counsel. Wadsworth claimed that his attorney, Federal Public Defender Kim Freter, was ineffective in plea negotiations. Additionally, that Freter was ineffective because she refused to file an appeal after Wadsworth allegedly directed her to file

---

[1] References to documents in Wadsworth's criminal case will be denoted with "Crim," followed by the relevant document number.

1

one. The Court ordered the Government to respond to Wadsworth's motion. (Doc. 4).

## II.     **LEGAL STANDARD**

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013)). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019).

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. This right to assistance of counsel encompasses the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt*, 574 F.3d at 458. The Court must then consider

2

whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id*. To satisfy the second prong of the Strickland test, the plaintiff "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694); *accord Groves*, 755 F.3d at 591; *Jones*, 635 F.3d at 915.

While ineffective assistance of counsel may be grounds for withdrawing a guilty plea, once a defendant is sentenced, that standard is high. *United States v. Cross*, 962 F.3d 892, 896 (7th Cir. 2020). A defendant must have knowingly, voluntarily, and intelligently entered a plea of guilty, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). To withdraw a guilty plea, a defendant must demonstrate that the ineffectiveness of their counsel rendered their plea unknowing, involuntary, unintelligent, or without sufficient awareness of the circumstances and consequences. This includes, for example, cases where a defendant has not been informed of the necessary elements for the crime. *Bradshaw*, 545 U.S. at 183; *Henderson v. Morgan*, 426 U.S. 637, 645-47 (1976) ("A plea may be found invalid . . . where a defendant pleads guilty to a crime without having been informed of the crime's elements."). Other examples of ineffectiveness that form sufficient good cause to withdraw a guilty plea include failure "to learn facts about the case or failed to make a good-faith estimate of the likely sentence." *United States v. Howard* 175 Fed. Appx. 37, 39 (7th Cir. 2006) (citing *United States v. Carroll*, 412 F.3d 787, 793 (7th Cir. 2005)). While "a gross mischaracterization of the sentencing consequences of a plea may indicate that counsel performed deficiently . . . a counsel's mere inaccurate prediction of a sentence does not." *Id*.

(internal citations omitted).

### III.   <u>ANALYSIS</u>

#### A. <u>Failure to Appeal Claims</u>

Beginning with the issue of the Notice of Appeal, Freter's sworn declaration conflicts with Wadsworth's claims. In her declaration, Freter stated that she spoke to Wadsworth after the sentencing and advised him—given he received the statutory minimum—that he received the best possible outcome. According to Freter, Wadsworth did not "unequivocally communicate" to her that he wanted her to file an appeal, nor did he indicate any issues he wanted to raise on appeal. (Doc. 14, Ex. D). The next time Wadsworth contacted Freter was in a voicemail where he said that the date to report to the Bureau of Prisons was earlier than he hoped. In that voicemail he "did not communicate that he wanted his sentence appealed or that he wanted to contest his guilty plea." (Id.). However, Freter declares that she "would have filed a Notice of Appeal had Mr. Wadsworth unequivocally communicated from [the day he was sentenced] through [the day of his voicemail] that he wanted [her] to file [a Notice of Appeal]." (Id.).

In contrast, Wadsworth filed his own declaration claiming he told Freter that "something did not feel right and that [he] would like to file an appeal." (Doc. 12). He claims he said this in front of his father. (Id.). According to Wadsworth, Freter said she "would be in touch with [him]" but "never filed a notice of appeal." (Id.).

What precisely was said is in dispute. Additionally, while Freter stated that Wadsworth did not *unequivocally* communicate his desire to file an appeal, some elaboration may be necessary. The Government alleges that this is a "he-said-she-said" situation and that an evidentiary hearing is required. The Court agrees that an evidentiary hearing is required to resolve this issue and this issue *alone*. Therefore, this case shall be set for an evidentiary hearing

4

and the Court shall reserve ruling on the § 2255 petition.

**B. <u>Deficiency in Plea Negotiation Claims</u>**

The Court now turns to Wadsworth's other claims. Wadsworth alleges that his attorney "was ineffective in plea negotiations by having [him] plead guilty to a crime . . . which he did not meet all the necessary elements [for]." (Doc. 1). A necessary element for both 18 U.S.C. 2422(b) and 18 U.S.C. 1591(b)(1) is that the defendant intended to engage in a sexual act with a minor under the age of eighteen and under the age of fourteen, respectively.

Freter advised Wadsworth to plead guilty to the charges based on the evidence. It was, and remains, her opinion that "the Government would have been able to produce at trial all of the evidence that was provided in discovery such that there would have been legally sufficient evidence to sustain guilty verdicts for both" of his crimes. (Doc. 14, Ex. D).

Now, Wadsworth disagrees and argues that there was not enough evidence to establish that he meets all the necessary elements. Specifically, Wadsworth believes that there is insufficient evidence to establish that he intended to engage in sexual acts with a minor under the age of eighteen and under the age of fourteen. Wadsworth points to four lines of a long email chain between himself and an undercover agent that, he claims, somehow, establishes Freter was ineffective for advising him to plead guilty. The snippet of the conversation is as follows:

> Wadsworth: "'She's 18 right wink wink.'"
> Undercover: "'Of course wink wink."
> Wadsworth: "'? She is 18 correct'"
> Undercover: "'Yes wink.'"

(Doc. 18, Ex. F). Wadsworth claims that "wink" is a text abbreviation for "what I need to know." He says that this proves that he "confirmed twice" that the victim was eighteen. On this basis and this basis alone, he alleges that Freter was ineffective by advising him to plead guilty and that his plea should be withdrawn.

This is absurd.

First, Wadsworth reached out to the undercover agent of his own volition. The undercover agent *explicitly* communicated that the purported child was ten years old and confirmed that Wadsworth was seeking sexual intercourse. (Id.). Wadsworth was aware of the purported minor's age, in fact, it is clear from the conversation that their age was the key motivator for Wadsworth; he asked the undercover for the "[y]oungest girl [he] have[s]." (Id.).

Second, beyond outreaching to the undercover agent, Wadsworth pushed for pornographic photos from the agent. (Id.). He haggled with the undercover over nude photos and demanded photos of specific parts of the purported minor child's body. (Id.). Wadsworth spoke of her genitals and the sexual acts he wished to perform in a lurid and lascivious manner, (Id.), that the Court will refrain from reiterating. Not only that, he asked how sexually active the minor child was. (Id.). Then, he offered to pay for those sexual acts and confirmed with the undercover agent that he wanted sexual contact for $1,000. (Id.). The undercover agent suggested Wadsworth bring gummy bears to help entice the purported minor child and Wadsworth was arrested with a pack of gummy bears in his back pocket. (Id.).

Third, setting aside the repugnant details, Wadsworth's argument that "wink wink" exonerates him is farcical. The Government cites the dictionary definition of "wink wink," which explains that "wink wink" refers to something that is "a joke or a secret." (Doc. 17). However, a dictionary definition is unnecessary. The term "wink wink" is a well-known indicator that the words a speaker is saying should not be taken at face value and that the listener should infer opposite intent. It is clear from the conversation Wadsworth had with the undercover that he specifically was seeking minors.

Fourth, even were the Court inclined to pretend that "wink" means "what I need to

know," in some contexts, inserting that abbreviation into the conversation reveals that, in this context, it clearly meant otherwise:

> Wadsworth: "She's 18 right [what I need to know, what I need to know],"
> Undercover: "Of course [what I need to know, what I need to know],"
> Wadsworth: "? She's 18 correct,"
> Undercover: "yes, [what I need to know.]"

(Doc. 18, Ex. F) (altered for demonstrative purposes). This is nonsensical. Even if the Court were to entertain Wadsworth's argument, it makes no sense for Wadsworth to repeat the phrase "what I need to know," twice, at the end of his sentence. Additionally, when Wadsworth arrived at the location, he initially told agents that he was there to "rescue" the purported child—admitting that he was aware of her age. (Doc. 18, Ex. H). It is obvious for anyone to see that this is not some arcane text abbreviation, but a ploy to establish some form of plausible deniability. The context of the situation, however, extinguishes that plausibility.

Be that as it may, the Court is not tasked with determining whether the evidence demonstrates his guilt—that is for a trier of fact to decide. Rather, the Court is tasked with determining, in light of this evidence, whether no reasonable attorney would have advised Wadsworth to plead guilty. This question is complicated by the fact that there is a statutory minimum of fifteen years on one of his crimes and a statutory minimum of ten years on the other. Some may question why Freter advised Wadsworth to plead guilty when there were fifteen-year and ten-year statutory minimums on his crimes. While there may be significant evidence, if there was a chance at a not guilty verdict on even the commercial sex trafficking charge, trial may have been advisable rather than pleading guilty. While not raised by Wadsworth, in an abundance of caution, the Court will address this argument as well.

Due to a variety of circumstances, in many cases of enticement of a minor or commercial sex trafficking of a child, the guideline range is below the statutory minimum. When the

guideline range is below the statutory minimum, the offense level reduction a defendant receives by pleading guilty is inconsequential because, regardless of where the guideline range is, the Court is prohibited from imposing a sentence below the statutory minimum. Consequently, in those cases, a defendant who goes to trial and a defendant who pleads guilty are likely to receive the same sentence: the mandatory minimum. Because there is little if any benefit to pleading guilty in such cases, many of them go to trial.

That is not the case here. Here, the guideline range was *above* the statutory minimum. In fact, the statutory minimum was near the *low end* of Wadsworth's guideline range. Thus, the decision to take this case to trial would have resulted in a higher guideline range, a range even farther above the statutory range, because Wadsworth would not receive a reduction for acceptance of responsibility. If the evidence was not so overwhelming, perhaps Freter's advice to plead guilty would be arguable; but the evidence *is* overwhelming and thus Freter's professional judgment that Wadsworth would receive a lower sentence by taking a plea was not unreasonable.

The Court concludes from all the evidence presented above that Freter's advice to plead guilty did not fall below an objective standard of reasonableness. Freter was aware of the facts available and made a good faith determination that pleading guilty would be in the best interests of her client. The Court sees no reason to find that advice deficient.

Contrary to Wadsworth's contention that his attorney "[had him] plead guilty," (Doc. 1), the decision to plead guilty is a voluntary act and not up to an attorney to decide. An attorney advises, but the decision to plead is ultimately the defendant's. So long as that decision was knowing, voluntary, and made with awareness of the circumstances and the consequences, the plea is valid. Therefore, even if Wadsworth were able to somehow establish that Freter's advice fell below an objective standard of reasonableness, Wadsworth has failed to establish that the

8

supposed deficiency prejudiced him, i.e., that it rendered his plea involuntary, unknowing, or otherwise.

Wadsworth was explicitly informed of the elements of his crimes at his change of plea. The Government's response illustrates in exacting detail the steps this Court went through to ensure that Wadsworth—an adult man, competent enough to understand the proceedings—understood what he was charged with, understood the factual basis, and understood that he was waiving his right to a trial by jury. The very *names* of the offenses indicate the age of the victims "attempted enticement of a *minor*," "attempted commercial sex trafficking of a *child*." Wadsworth knew that the crimes he was charged with required the intended victim to be *at least* under the age of eighteen and under the age of fourteen respectively.

However, Wadsworth does not claim he was unaware of the required elements of the crime, rather he contests the sufficiency of the Government's evidence. This, despite the fact that the Court found that a factual basis existed for the plea and Wadsworth confirmed that the factual basis was correct. Now, he wants to withdraw his guilty plea, argue the evidence is insufficient, and he has previously moved to be released on bond pending the resolution of his § 2255. Read together, it is clear that Wadsworth is seeking a second bite at the apple; a chance to litigate this matter in a post-facto bench trial while out on bond.

The Court will not indulge him.

Wadsworth understood the nature of his crimes and the proceedings. He understood the evidence, the circumstances, and the consequences. Still, he chose to knowingly, intelligently, and voluntarily plead guilty. The Court has considered all the issues and arguments raised, in light of the evidence, and the transcripts of the sentencing and change of plea hearing. The Court finds, given the enormous body of evidence, that Freter's decision to advise Wadsworth to plead

guilty did not fall below an objective standard of reasonableness; nor does the Court find that Wadsworth has shown Freter's advice prejudiced him in any way, nor that he is entitled to withdraw his guilty plea. Consequently, Wadsworth's IAC claims against Freter related to his plea negotiations are frivolous and require no further consideration. Wadsworth's pending motions requesting discovery, leave to supplement his § 2255 after receiving discovery, and status on those motions are all deemed moot.

IV.   **CONCLUSION**

Wadsworth's claims that his counsel was ineffective in plea negotiations are frivolous because Freter's advice to plead guilty, considering the evidence, did not fall below an objective standard of reasonableness nor does Wadsworth's argument establish that he was prejudiced by her advice or that his plea was involuntary. Accordingly, Wadsworth's various pending motions for status, supplement, and discovery (Docs. 2, 3, 10, 11) the Court **FINDS AS MOOT**.

However, Wadsworth's ineffective assistance of counsel claim as to the notice of appeal requires further examination in the form of an evidentiary hearing. Therefore, the Court **RESERVES RULING** on Wadsworth's § 2255 motion. (Doc. 1). This case is to be set for an evidentiary hearing on the alleged failure to appeal claims. The scope of that hearing shall be confined solely to the issue of whether Wadsworth directed Freter to file an appeal in his criminal case.

**IT IS SO ORDERED.**
**DATED:  June 17, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**

10