UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUSTIN A. WADSWORTH,<br><br>  Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>  Respondent. | Case No. 4:23-cv-04023-JPG<br><br>Criminal No. 4:20-cr-40045-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court following an evidentiary hearing on Wadsworth's petition to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. 1). The Court had determined that, while some of Wadsworth's claims were frivolous, one of his claims required an evidentiary hearing for the Court to resolve. (Doc. 19). At the conclusion of the evidentiary hearing, the Court denied Wadsworth's 2255 petition. Consequently, the Court **DENIES** Wadsworth's § 2255 petition, (Doc. 1). The Court construes Wadsworth's reply as a motion for reconsideration and **DENIES** that motion as well. (Doc. 30)

**I. INTRODUCTION**

Wadsworth filed a habeas petition pursuant to § 2255. The Court dismissed some of his claims as frivolous but reserved ruling on his petition and called an evidentiary hearing. (Doc. 19).

Rule 8(c) of the Rules Governing Section 2255 Proceedings requires, when an evidentiary hearing is warranted to resolve a factual dispute, that the Court appoint an attorney to represent a petitioner under 18 U.S.C. § 3006A. Pursuant to Rule 8(c), the Court appointed CJA Panel Attorney Robert L. Elovitz, Esq., to represent Wadsworth; however, the scope of Elovitz's

1

representation was limited to the evidentiary hearing, *not* Wadsworth's other frivolous claims. (Doc. 24). The Court called an evidentiary hearing to resolve a factual dispute over whether Wadsworth directed his attorney, FPD Kim Freter, to appeal his conviction.

Before Elovitz was appointed, the Court granted Wadsworth an extension to reply to the Government's response to his initial petition. (Doc. 25). Accordingly, Wadsworth filed a document that purports to be that reply. (Doc. 30).[1] However, as the Court has already ruled on his petition and Wadsworth's reply does not raise any additional facts or legal arguments. The Court shall construe Wadsworth's reply as a motion for reconsideration, which the Court likewise denies.

## II. BACKGROUND

On June 30, 2022, the Petitioner, Justin A. Wadsworth, pled guilty to one count of attempted enticement of a minor and one count of attempted commercial sex trafficking of a child. (Case No. 4:20-cr-40045-JPG, Docs. 29, 62).[2] On January 10, 2023, Wadsworth was sentenced on those counts to the mandatory minimum of 180 months in prison. (Crim., Doc. 69).

On December 26, 2023, Wadsworth filed his motion under § 2255 alleging that he received ineffective assistance of counsel. Wadsworth claimed that his attorney, Federal Public Defender Kim Freter, was ineffective in plea negotiations. Additionally, that Freter was ineffective because she refused to file an appeal after Wadsworth allegedly directed her to file one. The Court ordered the Government to respond to Wadsworth's motion. (Doc. 4).

The Government responded with an affidavit from Freter disputing Wadsworth's claims, but argued that an evidentiary hearing was required given their testimonies conflicted. (Doc. 17).

---

[1] Wadsworth filed an additional reply on August 26, 2024, (Doc. 31), however, both that reply and the reply filed on August 12, 2024, (Doc. 30), appear to be identical.
[2] References to documents in Wadsworth's criminal case will be denoted with "Crim," followed by the relevant document number.

The Government also presented more than sufficient grounds to determine that Wadsworth's other claims—that the Government lacked sufficient evidence to establish he violated the elements of his crimes—were frivolous. Consequently, the Court dismissed those frivolous claims but reserved ruling on his appellate claims until after the evidentiary hearing. (Doc. 19).

On June 25, 2024, Wadsworth moved for an extension of time to reply to the Government's response. (Doc. 23). The Court granted that extension, (Doc. 25), and pushed the deadline to reply to two weeks after the evidentiary hearing to give Wadsworth the opportunity to incorporate the facts from the hearing in his reply if he so desired.

On July 23, 2024, the Court held the evidentiary hearing and heard testimony from both Wadsworth and Freter. (Doc. 29). After testimony concluded, the Court was prepared to rule on Wadsworth's petition. The Court found that Freter's testimony was more credible than Wadsworth's and, accordingly, denied Wadsworth's petition. (Id.).

Wadsworth filed his reply on August 12, 2024. (Doc. 30). In that reply, Wadsworth submits new evidence—screenshots from his cellphone purportedly showing he searched for the county sheriff before he arrived at the location of his arrest. He argues that this vindicates him. Additionally, Wadsworth renews his claims that Freter's testimony is unspecific and contradictory. Furthermore, Wadsworth asserts a new claim: that he was under the influence of prescription medication at the time of his plea, the Court failed to determine his competency, and, therefore, his plea was not voluntary. Wadsworth also filed a reply on August 26, 2024, (Doc. 31), but it appears to be a carbon copy of his reply on August 12.

### III.   LEGAL STANDARD

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). However,

3

"[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013)). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019).

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. This right to assistance of counsel encompasses the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009). When a defendant instructed their attorney to file a notice of appeal and their attorney failed to do so, a defendant need not show that they were prejudiced by that failure, it is per se ineffective assistance of counsel. *Castellanos v. United States*, 26 F.3d 717, 720 (7th Cir. 1994).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt*, 574 F.3d at 458. The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of

professionally competent assistance. *Id*. To satisfy the second prong of the Strickland test, the plaintiff "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694); *accord Groves*, 755 F.3d at 591; *Jones*, 635 F.3d at 915.

While ineffective assistance of counsel may be grounds for withdrawing a guilty plea, once a defendant is sentenced, that standard is high. *United States v. Cross*, 962 F.3d 892, 896 (7th Cir. 2020). A defendant must have knowingly, voluntarily, and intelligently entered a plea of guilty, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). To withdraw a guilty plea, a defendant must demonstrate that the ineffectiveness of their counsel rendered their plea unknowing, involuntary, unintelligent, or without sufficient awareness of the circumstances and consequences. This includes, for example, cases where a defendant has not been informed of the necessary elements for the crime. *Bradshaw*, 545 U.S. at 183; *Henderson v. Morgan*, 426 U.S. 637, 645-47 (1976) ("A plea may be found invalid . . . where a defendant pleads guilty to a crime without having been informed of the crime's elements.").

Other examples of ineffectiveness that form sufficient good cause to withdraw a guilty plea include failure "to learn facts about the case or failed to make a good-faith estimate of the likely sentence." *United States v. Howard* 175 Fed. Appx. 37, 39 (7th Cir. 2006) (citing *United States v. Carroll*, 412 F.3d 787, 793 (7th Cir. 2005)). While "a gross mischaracterization of the sentencing consequences of a plea may indicate that counsel performed deficiently . . . a counsel's mere inaccurate prediction of a sentence does not." *Id*. (internal citations omitted).

## IV. ANALYSIS

### A. Failure to Appeal Claims

Beginning with the issue of the Notice of Appeal, Freter's sworn affidavit conflicted with Wadsworth's claims. In her affidavit, Freter stated that she spoke to Wadsworth after the sentencing and advised him—given he received the statutory minimum—that he received the best possible outcome. According to Freter, Wadsworth did not "unequivocally communicate" to her that he wanted her to file an appeal, nor did he indicate any issues he wanted to raise on appeal. (Doc. 14, Ex. D).

The next time Wadsworth contacted Freter was in a voicemail where he said that the date to report to the Bureau of Prisons was earlier than he hoped. In that voicemail he "did not communicate that he wanted his sentence appealed or that he wanted to contest his guilty plea." (Id.). However, Freter declared that she "would have filed a Notice of Appeal had Mr. Wadsworth unequivocally communicated from [the day he was sentenced] through [the day of his voicemail] that he wanted [her] to file [a Notice of Appeal]." (Id.).

In contrast, Wadsworth filed his own affidavit claiming he told Freter that "something did not feel right and that [he] would like to file an appeal." (Doc. 12). He claimed he said this in front of his father. (Id.). According to Wadsworth, Freter said she "would be in touch with [him]" but "never filed a notice of appeal." (Id.).

What precisely was said is in dispute. Additionally, while Freter stated that Wadsworth did not *unequivocally* communicate his desire to file an appeal, some elaboration was necessary. The Government alleged that this is a "he-said-she-said" situation and that an evidentiary hearing was required; the Court agreed.

At the evidentiary hearing, Freter and Wadsworth both provided testimony. Wadsworth

6

repeated his claim that he said "something did not feel right" about the plea and that he wished to file an appeal. He renewed his claim that Freter told him she would be in touch. Wadsworth did not mention this appeal in his voicemail, nor did he send an email. When asked whether there were any witnesses to his conversation with Freter—as his affidavit heavily implied his father was witness to the conversation—Wadsworth clarified that his father was not a witness to the conversation, nor could he name any other witnesses that may corroborate his story.

When Freter testified, she reiterated claims in her affidavit that Wadsworth's voicemail did not mention wanting to file an appeal, nor does she recall him mentioning an appeal to her. She testified that, while she cannot remember specific details of her conversation, that she has developed a routine response to all clients who expressed a desire to appeal. She testified that if he mentioned an appeal, she would have immediately questioned Wadsworth because she would need to know the basis of the appeal in short order. Freter did not recall any of that with respect to Wadsworth and, given she habitually responds the same way when a client asks to appeal, she asserts that she does not believe he directed her to file an appeal.

As the petitioner, Wadsworth bears the evidentiary burden of showing that Freter was ineffective. Wadsworth has presented no documents, no witnesses, no specific details that would corroborate his claims. Wadsworth's affidavit was highly misleading concerning the presence of his father as a witness. This cuts against the credibility of Wadsworth's testimony, both because his testimony appears inconsistent with his affidavit and because Wadsworth affirms that there were no witnesses to his conversation.

Wadsworth had ample opportunity to ask about a notice of appeal or to express his desire to file one—in voicemail, email, or in person. The Court advised Wadsworth both of his right to appeal and the appellate filing window at the entry of his guilty plea. Wadsworth presents only

his testimony as evidence, yet that too is unpersuasive. His testimony lacked specific details that would lend to his credibility.

In contrast, Freter's testimony is persuasive. As the Court observed during the hearing, the word "appeal" is a "trigger word;" defense attorneys are well aware that a failure to appeal is per se ineffective assistance of counsel, as would Freter. The mention of an "appeal" would generally warrant a response and prompt questions on the basis for an appeal. As an experienced defense attorney who has filed many appeals over the years, Freter was familiar with the process. As Freter testified, filing an appeal is not a huge burden nor is it incredibly time consuming.

Additionally, under Rule 406 of the Federal Rules of Evidence:

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

Fed. R. Evid. 406. Given Freter's years of practice as a defense attorney and her experience filing appeals, her claims that she provides a routine response and questions to clients asking for an appeal, are reasonable. Though Freter cannot recall the specifics of the conversation in detail and Wadsworth claims he mentioned an appeal, neither Wadsworth nor Freter recall any questions or responses that would be consistent with Freter's habitual response. Were Wadsworth's testimony to be believed, not only would Freter have failed to file an appeal and failed to follow up on the details of that appeal, she also would have broken from her habit or routine practice. That seems unlikely.

In summary, Wadsworth's testimony and now his affidavit are of questionable credibility and Wadsworth has failed to offer any corroborating evidence or convincing testimony. In contrast, Freter's testimony is consistent with her affidavit and evidence of habit is especially persuasive here. There is no indication why Freter would break with her routine practice here,

nor why she would refuse to ask even basic questions she must know for filing the notice of appeal.

For all these reasons, the Court found that Wadsworth has failed to meet his burden.

**B. Involuntary Plea & Additional Evidence for Frivolous Claims**

In Wadsworth's reply to the Government's response to his habeas petition, Wadsworth raises a new claim: that his plea was involuntary based on the medication he was taking at the plea. Wadsworth asserts that the Court asked him if he was on medication. After he relayed his medication to the Court and said that he was "good," Wadsworth alleges that the Court "failed to inquire further as to the effect of the medication on his ability to enter a knowing and voluntary guilty plea." (Doc. 30). Wadsworth claims that the Court's purported failure to question or ascertain Wadsworth's competence to plead after being informed that he was on medication renders his plea involuntary.

Wadsworth is mistaken.

A review of the change of plea transcript reveals that the Court did ask whether the medication affected his ability to understand the proceedings. Wadsworth confirmed that his medication did not interfere with his ability to plead.

> THE COURT: Are you currently on any medication?
> THE DEFENDANT: I am.
> THE COURT: What medications are you on?
> THE DEFENDANT: I am taking pain medicine, Percocet, for my back, but I'm good.
> THE COURT: When is the last time you took it?
> THE DEFENDANT: It was yesterday.
> THE COURT: Does it have any effect on your ability to be understand (sic) what you are doing here right now?
> THE DEFENDANT: No, sir.

Change of Plea Trans. 4:1-12. Wadsworth has presented no evidence nor any convincing argument why he was not competent at his change of plea based on his medication.

Wadsworth's reply also includes more "evidence" that he believes exonerates him. The

Court has already determined that Wadsworth's claims as to the sufficiency of the evidence for his conviction and claims of his innocence are frivolous. Wadsworth's inclusion of screenshots indicating he searched for the sheriff does not come close to exonerating him. The screenshots he submitted include searches for the local newspaper alongside the search for the sheriff. Wadsworth claims that it shows he intended to contact the sheriff's office, but it could just as easily show that Wadsworth was searching local news and the sheriffs office to find out if there was any information on law enforcement sting operations. While Wadsworth's motive is unclear, these screenshots are not the "smoking gun" that Wadsworth seems to believe they are.

As the Court construes his reply as a motion for reconsideration, and the facts and arguments Wadsworth raises do not approach the standard for amending judgment under Fed. R. Civ. Pro. 59(e), his motion for reconsideration is denied.

## V.     CONCLUSION

Finding that Wadsworth has failed to meet the evidentiary burden to support his claim that he directed his attorney, Kim Freter, to file an appeal, Wadsworth's § 2255 petition, (Doc. 1), is hereby **DENIED**. Additionally, his reply, (Doc. 30), which the Court construes as a motion for reconsideration pursuant to Fed. R. Civ. Pro. 59(e), presents insufficient grounds to alter judgment. Therefore, his motion for reconsideration, (Doc 30), is likewise **DENIED**.

After the hearing, Wadsworth's attorney contacted Chambers and stated that he intended to file an appeal. Given Wadsworth is represented by counsel and counsel has requested an appeal, the Court **GRANTS** a certificate of appealability.

**IT IS SO ORDERED.**
**DATED:  August 28, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**
